[818 NE2d 1110, 785 NYS2d 369]

In the Matter of CATHERINE G., Individually and as Parent and Guardian of BRITTANY G. and Others, Infants, Appellant-Respondent, v COUNTY OF ESSEX et al., Respondents-Appellants, and CRISIS CENTER OF CLINTON, ESSEX, AND FRANKLIN COUNTIES, INC., et al., Respondents.

Argued September 7, 2004; decided October 14, 2004

**POINTS OF COUNSEL**

*O'Connell and Aronowitz,* Albany (*Cornelius D. Murray* and *April M. Wilson* of counsel), for appellant-respondent. The Appellate Division erred in denying Melissa leave to file a late notice of claim. (*Matter of Kimberly S.M. v Bradford Cent. School,* 226 AD2d 85; *Ivan John M. v Catholic Home Bur.,* 182 AD2d 421; *Matter of Nathaniel TT.,* 265 AD2d 611; *Matter of Rachel G.,* 185 AD2d 382; *Matter of Angelina AA.,* 211 AD2d 951; *Matter of Christopher O.,* 211 AD2d 980; *Matter of Commissioner of Social Servs. [Kanisha W.],* 233 AD2d 325; *Matter of Amanda LL.,* 195 AD2d 708; *Matter of New York State Assn. of Life Underwriters v New York State Banking Dept.,* 83 NY2d 353; *Matter of Howard v Wyman,* 28 NY2d 434.)

*FitzGerald Morris Baker Firth P.C.,* Glens Falls (*John Dutton Aspland* of counsel), for County of Essex and others, respondents-appellants. I. Respondents-appellants did not violate any statutory duty established by Social Services Law

§ 413. (*Matter of Drozdzal v Rensselaer City School Dist.,* 277 AD2d 645; *People v Carroll,* 93 NY2d 564; *Matter of Yolanda D.,* 88 NY2d 790; *People v Wong,* 81 NY2d 600; *People v Myers,* 201 AD2d 855; *People v Goddard,* 206 AD2d 653; *Matter of Kimberly S.M. v Bradford Cent. School,* 226 AD2d 85; *Saafir v Metro-North Commuter R.R. Co.,* 260 AD2d 462; *Matter of Ford v Town of Guilderland,* 85 AD2d 868; *Matter of Meredithe C. v Carmel Cent. School Dist.,* 192 AD2d 952.) II. The absence of personal jurisdiction foreclosed the court's ability to grant leave to file a late notice of claim against the county respondents-appellants. (*Torres v City of New York,* 260 AD2d 368, 93 NY2d 815; *Matter of Eso v County of Westchester,* 141 AD2d 542; *Fashion Page v Zurich Ins. Co.,* 50 NY2d 265; *Marine Midland Realty Credit Corp. v Welbilt Corp.,* 145 AD2d 84; *Matter of Komanoff v Dodd,* 114 AD2d 344; *Berment v County of Erie,* 53 Misc 2d 366; *Fillyow v Westchester County,* 33 Misc 2d 501; *Raynor v Kirk,* 30 Misc 2d 1041; *Charm-Tex, Inc. v Sears, Roebuck & Co.,* 222 AD2d 304, 87 NY2d 810; *De Zego v Bruhn,* 99 AD2d 823, 63 NY2d 770, 67 NY2d 875.) III. No duty to report extends to unknown cases of abuse and the Legislature did not envision such a duty. (*Riley v County of Broome,* 95 NY2d 455; *Leader v Maroney, Ponzini & Spencer,* 97 NY2d 95; *Bluebird Partners v First Fid. Bank,* 97 NY2d 456.)

*Law Office of James M. Brooks,* Lake Placid (*Jenifer R. Briggs* and *James M. Brooks* of counsel), for Lake Placid Central School District and others, respondents-appellants. I. The school respondents did not violate any statutory duty established by Social Services Law § 413. (*Matter of Kimberly S.M. v Bradford Cent. School,* 226 AD2d 85; *Matter of Swain v County of Albany,* 268 AD2d 747, 94 NY2d 764; *Matter of Katz v Town of Bedford,* 192 AD2d 707.) II. The Appellate Division properly reversed the order granting leave to file a late notice of claim on behalf of Melissa. (*Matter of Doe v Madrid-Waddington Cent. School Dist.,* 232 AD2d 922; *Matter of Donald E. v Gloversville Enlarged School Dist.,* 191 AD2d 749; *Matter of Drozdzal v Rensselaer City School Dist.,* 277 AD2d 645; *De Jesus v County of Albany,* 267 AD2d 649; *Matter of Leiblein v Clark,* 207 AD2d 348.)

## OPINION OF THE COURT

ROSENBLATT, J.

Pursuant to Social Services Law § 422, the Legislature established a statewide central register of child abuse and maltreatment (*see* L 1973, ch 1039, § 1). Petitioner sought leave

under General Municipal Law § 50-e (5) to file late notice of claim against various county and school officials. She maintains they were mandated to do so but failed to report to the central register evidence that her son abused one of her daughters. We conclude that it was an abuse of discretion to permit the late notice of claim because, in the circumstances present here, the claim is patently meritless.

In August 2000, petitioner had four children living in her home: a boy, aged 14; and three girls, Brittany, nine; Melissa, eight; and Marcie, four. The boy is the girls' half-brother. After discovering that her son may have been inappropriately touching Brittany, petitioner told Brittany's pediatrician about it. She also called the New York State Central Register of Child Abuse and Maltreatment hotline. The person who answered the call, however, explained to petitioner there was nothing the agency could do, because under these circumstances petitioner's son was not a "person legally responsible" for her daughter (*see, e.g.,* Social Services Law § 412 [3]).*

In September 2000, petitioner raised the problem with school psychologist Dr. Randy Quayle, who referred Brittany to counseling at Crisis Center of Clinton, Essex, and Franklin Counties, Inc. Neither the pediatrician, the school psychologist, nor the crisis center counselor made reports to the state hotline.

An unknown third party called the hotline in January 2001 and reported incidents involving petitioner's son and Brittany. The hotline accepted this report. As a result, Dr. Laura Sowden, an employee of Essex County Mobile Mental Health, visited the family's home. After an investigation that included an interview with the boy, Dr. Sowden determined that because the matter involved an isolated incident of touching, no further threat existed. In her view, the matter was not serious enough for criminal prosecution or further intervention and would be best handled by mental health counseling.

Brittany eventually told her mother that the abuse extended beyond inappropriate touching and that her brother was subjecting her and her younger sisters to repeated acts of rape and sodomy. On behalf of herself and her daughters, petitioner sought to sue Essex County and the Lake Placid Central School District, claiming that, as mandatory reporters, their officials were required to report to the state hotline and thereby could

---

* The hotline confirmed this when petitioner called again in January 2001.

have prevented her son from harming her daughters. Because the deadline for filing the notice of claim had already passed, petitioner attempted a late filing under General Municipal Law § 50-e (5). Supreme Court granted the motion with respect to Brittany and the middle daughter but denied it with respect to petitioner and the youngest daughter. The court ruled that based on petitioner's September 2000 report, there was no reason to suspect any harm to the four year old.

The Appellate Division modified by allowing only Brittany's claim because the September 2000 report to school officials involved her alone. We modify and hold that leave to file late notice should have been denied with respect to Brittany's claim as well. General Municipal Law § 50-e (5) allows a late notice of claim when, in the court's discretion, it is justified (*see generally* Siegel, NY Prac § 32, at 34-38 [3d ed 1999]). Leave is not appropriate for a patently meritless claim (*see also Matter of Katz v Town of Bedford*, 192 AD2d 707, 708 [2d Dept 1993]).

For purposes of reporting to the statewide register, Social Services Law § 412 (1) defines an abused child as one so defined under the Family Court Act. Section 1012 (e) of the Family Court Act defines "[a]bused child" as a child harmed by a "parent or other person legally responsible for his care." It uses the same "parent or other person legally responsible for his care" in the definition of "[n]eglected child." (§ 1012 [f] [i].) Since the boy was obviously not a parent or guardian, the only question is whether he was a "person legally responsible for [Brittany's] care." Under the circumstances of this case, he was not.

Section 1012 (g) of the Family Court Act states that a " '[p]erson legally responsible' includes the child's custodian, guardian, [or] any other person responsible for the child's care at the relevant time." The plain meaning of these terms excludes petitioner's son. We recognize that the very next sentence provides that "Custodian may include any person continually or at regular intervals found in the same household as the child when the conduct of such person causes or contributes to the abuse or neglect of the child." The proof, however, rules out petitioner's son as a "custodian" of his half-sisters, as petitioner made it clear that she did not leave the girls in his charge.

We decline petitioner's invitation to interpret the statute so broadly as to include her son. If we did, custodianship would, for the purposes of this statute, extend to virtually anyone, even

a 10-year-old sibling. According to one commentator, the Legislature intended the custodial category to permit child protective petitions against parents' paramours (*see* Besharov, Practice Commentaries, McKinney's Cons Law of NY, Book 29A, Family Ct Act § 1012, at 373 [1999 ed]). While the classification could properly extend to adult members of a household and, under unusual circumstances, perhaps a minor sibling, we do not believe there was a legislative intent uniformly to include minor siblings within the statute's scope. Moreover, the purpose behind the child abuse provisions of Family Court Act § 1012 is set forth in section 1011, in which the lawmakers declared that article 10 is "designed to provide a due process of law for determining when the state, through its family court, may intervene against the wishes of a parent on behalf of a child." Plainly, the law contemplates intervention in relationships between children and their parents (or guardians or custodians). Although in certain instances a sibling can be a guardian or custodian, this is not one of them.

Our conclusion is supported by the Social Services Law's definition of the "[s]ubject of the report" as including "any parent of, guardian of, custodian of or other person eighteen years of age or older legally responsible for [a child]" (Social Services Law § 412 [4]). Accordingly, a 14-year-old boy could not be the subject of a report even if he were "legally responsible" for purposes of the statute. Moreover, it would make no sense to require mandatory reporters to furnish information to the state hotline if the reporters know the abuser cannot be the subject of a report.

Ordinarily, the State would not need to intervene when a minor is abusing a sibling. Parents would usually be the ones to take action. Petitioner never suggested that she was so bereft of control that she was unable to stop her 14-year-old boy from harming his siblings. The record reveals a mother who, as the person in charge of the household, appeared to be taking responsible measures to protect her daughters and obviate the need for governmental intervention. If there were evidence to the contrary, the officials involved would have been obligated to report her as a person who "allows to be committed an offense against [a] child" (Family Ct Act § 1012 [e] [iii]).

As the facts demonstrate, neither the mandatory reporters nor the state hotline itself considered a parent's report about her child's misconduct to fall within the reach of the reporting statutes. From his training and experience, Dr. Quayle knew

the state hotline would not ordinarily accept reports about a 14 year old inappropriately touching his sister. Dr. Quayle's assessment was correct: on the two occasions petitioner called the hotline, the case worker told her that the registry lacked authority over the matter. Under the circumstances, there is no reason to suppose a report from Dr. Quayle to the state hotline would have changed anything.

Indeed, when the state hotline actually took a report from a third person, the result was a home visit from a psychologist who determined that based on her investigation, the situation did not appear to warrant more drastic action or anything beyond counseling. It is safe to say that an earlier visit would not have prevented any abuse even if had taken place the same day as petitioner's report to Dr. Quayle.

The Legislature could have required mandatory reporting for each and every instance of abuse by one sibling against another, but chose not to do so. Reaching our conclusion on the facts of this case, we do not suggest any relaxation of statutory obligations of mandatory reporters. When in doubt about whether a case must be reported under Social Services Law § 413, they ought to err on the side of caution and make a report. It is for this reason that Social Services Law § 419 protects those who report in good faith by giving them immunity from liability from what may prove to have been an improvident report.

Because petitioner's claims were patently without merit, the motion court should have denied leave to file a late notice of claim.

Accordingly, the Appellate Division order should be modified, with costs to respondents-appellants, by denying the application to file a late notice of claim on behalf of Brittany and, as so modified, affirmed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Order modified, etc.